**Davoud Allen EGHBALI, Plaintiff,**

v.

**DEPARTMENT OF ENERGY AT the SAVANNAH RIVER NATIONAL LAB, Defendant.**

Civil Action No. 1:12–cv–03460–JMC.

United States District Court,
D. South Carolina,
Aiken Division.

Signed March 2, 2015.

Davoud Allen Eghbali, Wilmington, NC, pro se.

Terri Hearn Bailey, US Attorney's Office, Columbia, SC, for Defendant.

### ORDER AND OPINION

J. MICHELLE CHILDS, District Judge.

Plaintiff Davoud Allen Eghbali ("Plaintiff") filed this action pro se alleging that Defendant Department of Energy at the Savannah River National Lab ("Defendant") subjected him to discrimination because of his place of national origin—Iran—in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e–17. (ECF No. 1.) Specifically, Plaintiff claims that he was denied access to the Savannah River Site ("SRS"), which he states resulted in the loss of his employment and employment opportunity. (*Id.*) This matter is before the court on Defendant's Motion to Dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1) motion"). (ECF No. 46.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. On May 9, 2014, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's Motion to Dismiss. (ECF No. 50.) For the reasons set forth herein, the court **GRANTS** Defendant's Motion to Dismiss.

### I. Relevant Factual and Procedural Background

Plaintiff is originally from Iran, but is now a naturalized citizen of the United States. (ECF No. 1 at 4.) Plaintiff worked for Savannah River Site ("SRS") as a nuclear criticality safety specialist from 1989 until 2010. (*Id.*) From 1997 until September 2009, Plaintiff worked for Washington Safety Management Solution, LLC ("WSMS"), a contractor for SRS. (*Id.*) Plaintiff states that his job with WSMS did not require a security clearance. (*Id.* at 5.) When Plaintiff was indicted in September 2009 [1], Defendant's personnel at SRS

---

1. Plaintiff states that he was indicted for sending money to his family in Iran. (ECF No. 1 at

instructed WSMS to deny Plaintiff access to SRS pending the outcome of Plaintiff's indictment. (*Id.* at 4.)

Although Plaintiff's indictment was dismissed, Defendant continued to deny Plaintiff access to SRS. (*Id.* at 5.) As a consequence, WSMS terminated Plaintiff's employment in February 2010. (*Id.*) In January 2010, during Plaintiff's suspension from WSMS, he was offered an interview for a position with Savannah River Nuclear Solutions, LLC ("SRNS"), an SRS contractor. (*Id.*) Plaintiff was unable to interview for this position because Defendant would not allow him access to SRS. (*Id.*) Plaintiff claims that the basis for Defendant's denial of access to SRS was its "mere speculation, prejudice, and the unfavorable political climate between the United States and Iran." (*Id.*) As such, Plaintiff states that he has suffered the loss of his employment with WSMS and the loss of an employment opportunity with SRNS due to Defendant's national origin discrimination against him. (*Id.*)

On December 6, 2012, Plaintiff filed this action alleging national origin discrimination. (ECF No. 1.) On July 2, 2013, Defendant filed its first Rule 12(b)(1) motion. (ECF No. 24.) On July 11, 2013, Plaintiff filed a response in opposition to Defendant's Rule 12(b)(1) motion, to which Defendant filed a reply in support of its motion on July 23, 2013. (ECF Nos. 27, 29.) On July 31, 2013, Plaintiff filed a sur-reply to Defendant's reply. (ECF No. 30.) The Magistrate Judge issued her first Report and Recommendation on September 5, 2013, recommending that the court grant Defendant's Motion to Dismiss. (ECF No. 31 at 2.) On September 16, 2013, Plaintiff filed objections to the first Report and Recommendation. (ECF No. 34.)

Thereafter, the court entered a Text Order on February 14, 2014, denying Defendant's first Rule 12(b)(1) motion with leave to refile and requiring the parties to brief (1) how Defendant's decision to deny Plaintiff access to SRS was connected to a security clearance decision and (2) whether Plaintiff was included within the class of persons permitted to sue Defendant under Title VII. (ECF No. 37.) Defendant filed an amended Rule 12(b)(1) motion on March 20, 2014. (ECF No. 46.) Plaintiff filed a memorandum in opposition to Defendant's Rule 12(b)(1) motion on April 3, 2014. (ECF No. 49.) The Magistrate Judge issued her second Report and Recommendation on May 9, 2014, recommending that the court grant Defendant's Rule 12(b)(1) motion. (ECF No. 50.) Plaintiff filed objections to the second Report and Recommendation on May 22, 2014. (ECF No. 52.)

On September 29, 2014, the court heard argument from the parties on the pending Rule 12(b)(1) motion. (ECF No. 59.)

## II. Legal Standard

 The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court reviews de novo only those portions of the Magistrate Judge's Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

---

4.) The indictment specifically alleges that Plaintiff made a false statement to a special agent of the Federal Bureau of Investigation about the number of times Plaintiff sent money overseas (other than to his parents). (ECF No. 24–2.)

■ A motion to dismiss for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. *Id.* In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982)).

■ Plaintiff brought this action pro se, which requires the court to liberally construe his pleadings. Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Nevertheless, liberal construction does not mean the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 390–91 (4th Cir.1990).

## III. Analysis

### A. *The Magistrate Judge's Recommendation*

In the Report and Recommendation, the Magistrate Judge recommended dismissal of Plaintiff's claims because he was not a federal employee.[2] (*Id.* (citing 42 U.S.C. § 2000e–16(a) ("All personnel actions affecting employees or applicants for employment" with the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin.")).) In making this recommendation, the Magistrate Judge focused on the following evidence submitted by Defendant through affidavits:

- SRNS is the Managing and Operator ("M & O") contractor at SRS, is a private company, and is not an affiliate of Defendant (ECF No. 46–2 at 2 ¶¶ 3–4);

- SRNS has been under contract.("M & O Contract") with Defendant to manage and operate SRS for Defendant since August 1, 2008 (*Id.* at ¶ 4);

- Under the M & O Contract, Defendant pays SRNS reasonable and allowable costs as well as a fee for the work SRNS performs (*Id.*);

- Defendant retains oversight responsibility of SRNS in its performance of the M & O Contract (*Id.*); and

- WSMS is a subcontractor with SRNS and has no privity of contract with Defendant (*Id.* at 5 ¶¶ 13–14).

---

2. In making this recommendation, the Magistrate Judge concluded that the issue before the court was access to the premises and not security clearance. (ECF No. 50 at 594–95.) As a result, the Magistrate Judge did not agree with Defendant that the Supreme Court's holding in *Dep't of the Navy v. Egan* deprived the court of its subject matter jurisdiction. 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) (holding that an agency's decision to deny or revoke a security clearance was not subject to review because Congress had not specifically provided otherwise). The Magistrate Judge also did not recommend dismissal of Plaintiff's Title VII claim based on the exception found in 42 U.S.C. § 2000e–2(g) and delineated in *Toy v. Holder,* 714 F.3d 881 (5th Cir.2013), providing that it is not an unlawful employment practice if: "(1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and (2) such individual has not fulfilled or has ceased to fulfill that requirement." *Toy,* 714 F.3d at 883–84 (quoting 42 U.S.C. § 2000e–2(g)).

The Magistrate Judge further noted that Plaintiff admitted that he was not an employee of Defendant and failed to dispute Defendant's characterization of the relationships between Defendant, SRNS, and WSMS. (ECF No. 50 at 596.) Based on the foregoing, the Magistrate Judge recommended that the court find that "Plaintiff does not fall within the protections afforded by 42 U.S.C. § 2000e–16(a)" and, therefore, his claim should be dismissed for lack of subject matter jurisdiction.[3] (*Id.*)

### B. *Plaintiff's Objections to the Report and Recommendation*

In his objections to the Report and Recommendation, Plaintiff first disagrees with the Magistrate Judge's statement that Defendant denied him access to SRS, but did not deny him security clearance. (ECF No. 52 at 2.) Plaintiff asserts that his security clearance was suspended in 2002 without a due process hearing and Defendant not only denied him access to the site but also instructed WSMS to deny Plaintiff access to his workplace, which was outside the site boundary. (*Id.*) Plaintiff next objects to Defendant's citation to *Dep't of the Navy v. Egan*, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), and its reference to "an individual's potential to compromise national security" because he had an unblemished record and Defendant's denial of his access to the site "was driven by speculation and prejudice in violation of Title VII." (*Id.*) Plaintiff further differentiates his case from *Egan* and others cited by Defendant by pointing out that Defendant retained oversight responsibility of SRNS and the individual who denied him access to his workplace, Mr. Bartholomew, was Defendant's employee. (*Id.* at 4.)

More specifically, Plaintiff argues that *Egan* can be distinguished from his case because Egan did not have his "unblemished record as a law-abiding citizen." (*Id.*) Moreover, unlike Egan, "Plaintiff did not need a security clearance to enter WSMS [ ][to] perform his assignments, nor did he need security clearance to enter the site." (*Id.* at 4–5.) Plaintiff further argues that *Becerra v. Dalton*, 94 F.3d 145 (4th Cir.1996), *Kaplan v. Conyers*, 733 F.3d 1148, 1157 (Fed.Cir.2013), and *Toy v. Holder*, 714 F.3d 881 (5th Cir.2013), are all dissimilar to his case. (*Id.* at 6–7.) Finally, Plaintiff asserts that he tried to pursue other opportunities, but Defendant's discriminatory actions damaged his reputation. (*Id.* at 6.)

In consideration of the foregoing, Plaintiff requests that the court deny Defendant's Motion to Dismiss and "not let an obvious Civil Rights violation to be masked by the misuse of the Court's subject matter jurisdiction." (*Id.* at 8.)

### C. *The Court's Review*

To bring a successful Title VII claim against the United States, a Plaintiff must demonstrate the existence of a required employment relationship. *See* 42 U.S.C.A. § 2000e–16(a); 29 C.F.R. § 1614.103(c). Section 2000e–16(a) provides that "the threshold requirement for imposing Title VII liability against the federal government is that Plaintiff be an employee, or applicant for employment, of the Defendant federal agency." *See also King v. Dalton*, 895 F.Supp. 831, 836 (E.D.Va.1995). Further, "Title VII protects workers who are 'employees,' but does not protect independent contractors." *Kahn v. American Heritage Life Ins. Co.*,

---

**3.** In making this recommendation, the Magistrate Judge also considered whether Plaintiff stated a claim for interference under Title VII. (*See* ECF No. 50 at 596–97 (citing *Bender v. Suburban Hosp.*, 159 F.3d 186 (4th Cir. 1998)).) However, the Magistrate Judge declined to find that Plaintiff could state an interference claim against Defendant.

324 F.Supp.2d 652, 655 (E.D.Pa.2004) (citations omitted); *see also Metro. Pilots Ass'n, L.L.C. v. Schlosberg,* 151 F.Supp.2d 511 (D.N.J.2001). When Congress has not explicitly defined the term "employee," courts apply the common law agency test to determine whether an individual is either an employee or independent contractor. *Schlosberg,* 151 F.Supp.2d at 519. Finally, a plaintiff's lack of a required employment relationship deprives him of standing to pursue a Title VII claim. *See Jacob–Mua v. Veneman,* 289 F.3d 517 (8th Cir.2002) (holding that a non-employee volunteer lacks standing to bring a retaliation claim under Title VII).

■ Here, it is undisputed that Plaintiff is neither an employee of Defendant nor an applicant for employment with Defendant. In this regard, the court agrees with the Magistrate Judge that Plaintiff cannot properly be considered an "employee" of Defendant for the purposes of 42 U.S.C. § 2000e–16(a). Accordingly, because Plaintiff cannot meet Title VII's threshold requirement that he is either an employee or an applicant for employment with Defendant, it appears beyond doubt that he can prove no set of facts which would entitle him to relief. Accordingly, dismissal on this basis is proper.[4] *King v. Dalton,* 895 F.Supp. 831, 836 (E.D.Va. 1995) (threshold requirement for imposing Title VII liability against the federal government is that plaintiff be an "employee" or "applicant for employment" of the Defendant federal agency); *Lewis v. Newman,* 788 F.Supp. 1086, 1088–89 (N.D.Cal. 1991) (finding that because the MSPB was not the head of the agency employing plaintiff, MSPB was not the proper Defendant in plaintiff's discrimination suit).

**4.** Based on this court's aforementioned ruling, the court is not required to address the

## IV. Conclusion

For the reasons set forth above, the court hereby **GRANTS** Defendant Department of Energy at the Savannah River National Lab's Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1). (ECF No. 46.) Accordingly, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation and incorporates it by reference.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

SHIVA V. HODGES, United States Magistrate Judge.

In this employment discrimination case, Davoud Allen Eghbali ("Plaintiff"), proceeding pro se, sues the Department of Energy at the Savannah River National Lab ("Defendant" or "DOE") for national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). This matter comes before the court on Defendant's renewed motion to dismiss filed on March 20, 2014, pursuant to Fed.R.Civ.P. 12(b)(1). [Entry # 46]. On March 21, 2014, the court issued an order pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and possible consequences if he failed to adequately respond to the motion to dismiss. [Entry # 47]. The motion to dismiss having been fully briefed [Entries # 46, # 49], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion to dismiss is dispositive, this report

parties' substantive arguments.

and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendant's motion and dismiss Plaintiff's complaint in its entirety.

## I. Factual and Procedural Background

Plaintiff alleges that he immigrated to the United States from Iran in 1979 and is a naturalized United States citizen. [Entry # 1 at 4]. He states that he began working for the Savannah River Site ("SRS") in May 1989 as a nuclear criticality safety specialist. *Id.* He contends that he began working for Westinghouse Safety Management Solutions ("WSMS"),[1] a contractor providing support to SRS, in 1997 and continued to perform the job of nuclear criticality safety specialist until 2010. *Id.*

Plaintiff alleges that he was indicted in September 2009 for sending money to his family in Iran, but that the charge was later dismissed without prejudice. *Id.* He contends that at the time of the indictment, Defendant instructed WSMS to deny him access to his workplace pending the outcome of the indictment. *Id.*

Plaintiff asserts that in January 2010, while he was on suspension from WSMS, he was offered a position by another SRS contractor, Savannah River Nuclear Solutions, LLC ("SRNS"), but that Defendant refused to allow SRNS to invite him to the site for a job interview. *Id.* at 5. He alleges that in February 2010, WSMS terminated his employment even though the indictment had been dismissed and his job did not require a security clearance. *Id.*

Plaintiff asserts that Defendant's refusal to allow him to enter SRS resulted in his

loss of employment with WSMS and resulted in the loss of his employment opportunity with SRNS. *Id.* He contends that Defendant's actions were in violation of Title VII and resulted in lost income, the loss of his home, pain and suffering, mental anguish, emotional damages, and damage to his reputation. *Id.* at 5–6.

On July 2, 2013, Defendant filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. [Entry # 24]. On September 5, 2013, the undersigned issued a Report and Recommendation recommending that Defendant's motion be granted on the grounds that the revocation of a security clearance is not reviewable by the courts. [Entry # 31]. Plaintiff filed an objection to the Report and Recommendation clarifying that his complaint was based not on the revocation of a security clearance (which had been suspended in 2001), but on a denial of access to SRS. [Entry # 34 at 1]. Thereafter, the district judge denied Defendant's motion to dismiss with leave to refile the motion and address specific issues identified by the court. [Entry # 44]. First, the court instructed the parties to brief how Defendant's decision to deny Plaintiff access to SRS was connected to a security clearance decision. [Entry # 37]. Second, the court sua sponte raised the issue of whether Plaintiff was included within the class of persons permitted to sue Defendant under Title VII. *Id.* Defendant filed its amended motion to dismiss for lack of subject matter jurisdiction on March 20, 2014. [Entry # 46].

## II. Discussion

### A. Standard of Review

Dismissal is appropriate under Fed. R.Civ.P. 12(b)(1) where the court lacks

---

1. WSMS is also known as Washington Safety Management Solutions. [Entry # 46–2 at ¶ 12].

subject-matter jurisdiction. A motion to dismiss under Rule 12(b)(1) examines whether a complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir.1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

### B. Analysis

#### 1. Denial of Access

Through Plaintiff's objections and Defendant's amended motion, the parties have clarified that Defendant denied Plaintiff access to SRS, but did not deny him a security clearance. Thus, the issue before the court is whether the denial of access to SRS is reviewable by the court. Defendant asserts that the United States Supreme Court's decision in *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), is controlling. [Entry # 46–4 at 1–2].

In *Egan*, the Court declared that the approval, denial, or revocation of an individual's security clearance is within the executive branch's purview and "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive [Branch] in military and national security affairs." *Egan*, 484 U.S. at 530, 108 S.Ct. 818. The Fourth Circuit Court of Appeals has found that "in the absence of a specific mandate from Congress providing otherwise, *Egan* deprives the federal courts of subject-matter jurisdiction to review an agency's security clearance decision." *Reinbold v. Evers*, 187 F.3d 348, 357–58 (4th Cir.1999). The Fourth Circuit has specifically held that *Egan* bars judicial review of security clearance decisions in Title VII cases. *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir.1996).

Here, however, it is access to the premises, not the denial of a security clearance, that is at issue. Defendant argues that the *Egan* holding extends to all Executive Branch agency decisions involving "predictive judgments ... predicated on an individual's potential to compromise national security." [Entry # 46–4 at 3 (quoting *Kaplan v. Conyers*, 733 F.3d 1148, 1157 (Fed.Cir.2013))]. Defendant further argues that the decision to revoke Plaintiff's site access involved the very sort of "predictive judgment" that *Egan* requires to be committed to the broad discretion of the Executive Branch. Contrary to Defendant's position and the *Kaplan* majority, the dissent in *Kaplan* noted that the majority's extension of *Egan* was not sup-

ported by the language of *Egan* or by other circuits that had limited *Egan* to security clearances. *Id.* at 1167–68. Specifically, in *Toy v. Holder*, 714 F.3d 881, 885 (5th Cir.2013), an opinion issued just prior to the issuance of the *Kaplan* opinion, the Fifth Circuit Court of Appeals stated that "[n]o court has extended *Egan* beyond security clearances." The *Toy* court noted that security clearances were different from building access because security clearance decisions were made by specialized groups of people using a specified process. *Id.* at 885. Moreover, the court found that decisions regarding building access lacked the oversight, process, and considered decision-making inherent in security clearance determinations. *Id.* at 885–86.

Defendant asserts that the Fifth Circuit was mistaken in concluding that *Egan* had not been extended beyond security clearances. [Entry # 46–4 at 9]. The undersigned notes, however, that some of the cases Defendant relies on in support of this argument were specifically considered and distinguished by the *Toy* court. *See Toy*, 714 F.3d at 884–85 (distinguishing *Brazil v. Dep't of Navy*, 66 F.3d 193 (9th Cir.1995), and *Beattie v. United States*, 949 F.2d 1092 (10th Cir.1991)). Other cases cites by Defendant involve the denial of certifications, rather than a denial of access, and the undersigned finds them distinguishable from the facts presented here. *See Brazil v. Dept. of the Navy*, 66 F.3d 193, 195 n. 1, 196–97 (9th Cir.1995); *Foote v. Chu*, 928 F.Supp.2d 96, 99–101 (D.D.C. 2013). Significantly, the Fourth Circuit has not yet held that *Egan* extends beyond security clearances. As the court in *Foote* noted, "Extension of *Egan* to bar decisions other than the denial or revocation of a security clearance has proved [ ] controversial." *Id.* at 98.

In light of the absence of clear precedent on whether *Egan* extends beyond security clearances, the undersigned does not recommend extending it here. The *Toy* court's concern regarding a lack of oversight, process, and considered decision-making implicit in a defendant's decision to deny a plaintiff access also appear to be present in this case.

Defendant asserts that the *Toy* decision provides an independent, alternative ground for dismissal. [Entry # 46–4 at 10–11]. Specifically, although the *Toy* court did not extend *Egan* beyond security clearances, it did dismiss the plaintiff's Title VII claim based on an exception to the statute providing that it is not an unlawful employment practice if:

(1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

(2) such individual has not fulfilled or has ceased to fulfill that requirement.

*Toy*, 714 F.3d at 883–84 (quoting 42 U.S.C. § 2000e–2(g)).

Notably, however, Defendant has not fully briefed this issue, instead relying on its argument under *Egan* in support of dismissal. Therefore, the undersigned does not recommend dismissal under the Title VII exception, particularly because Defendant has not identified any statute or executive order of the President on which to base the exception. The undersigned notes that Plaintiff appears to concede the applicability of 10 C.F.R. Part 710, which establishes the criteria and procedures for determining eligibility for access to classi-

fied matter or special nuclear material. *See* Entry # 49 at 6, 8.

### 2. Applicability of Title VII

Defendant next argues that Plaintiff's claims should be dismissed for lack of jurisdiction because Plaintiff was not a federal employee and is, therefore, not entitled to the protections set forth in Title VII. Pursuant to 42 U.S.C. § 2000e–16(a), "all personnel actions affecting employees or applicants for employment" with the federal government must "be made free from any discrimination based on race, color, religion, sex, or national origin."

Plaintiff's complaint is premised on two grounds: (1) his loss of employment with WSMS and (2) his alleged inability to interview for employment with SRNS. [Entry # 1 at ¶¶ 5–6, 8–9]. Relying on affidavits, Defendant provides the following information regarding these entities:

- SRNS is the Managing and Operator ("M & O") contractor at SRS, is a private company, and is not an affiliate of DOE. [Entry # 46–2 at ¶¶ 3–4].
- SRNS has been under contract ("M & O Contract") with DOE to manage and operate SRS for DOE since August 1, 2008. *Id.* at ¶ 4.
- Under the M & O Contract, DOE pays SRNS reasonable and allowable costs as well as a fee for the work SRNS performs. *Id.* DOE retains oversight responsibility of SRNS in its performance of the M & O Contract. *Id.*
- WSMS is a subcontractor with SRNS and has no privity of contract with DOE. *Id.* at ¶¶ 13–14.

Plaintiff has not disputed Defendant's characterization of the relationships between DOE, SRNS, and WSMS, nor has he offered any response to Defendant's argument that Title VII is inapplicable to the facts presented here. Rather, Plaintiff admits that he was not an employee of Defendant [Entry # 49 at 6 (Plaintiff writes in the first person, "Eghbali never claimed he was an employee of either SRNS or DOE.")] and does not assert that he was applying for employment with Defendant. In light of these facts, the undersigned recommends finding that Plaintiff does not fall within the protections afforded by 42 U.S.C. § 2000e–16(a) and, therefore, Title VII does not apply. The undersigned further recommends that Plaintiff's complaint, which includes only a single claim under Title VII, be dismissed in its entirety for lack of subject matter jurisdiction.

In making this recommendation, the undersigned has considered whether Plaintiff has stated a claim of interference under Title VII. In *Bender v. Suburban Hosp.*, 159 F.3d 186 (4th Cir.1998), the Fourth Circuit assumed, without deciding, that an entity that is an "employer" under Title VII may be liable for interfering with someone's employment relationship with a third party if done for discriminatory reasons. *Id.* at 188 (citing *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341–42 (D.C.Cir.1973)). In *Bender,* the defendant hospital denied the plaintiff doctor staff privileges. 159 F.3d at 187. The doctor was an independent contractor of the hospital, rather than an employee, but argued that the hospital was still liable to her for Title VII sex discrimination because it had harmed her employment relationship with a third party. *Id.* at 188. The court stated that to establish a Title VII interference claim, the plaintiff must demonstrate an "employment relationship" with a third party, which the plaintiff doctor had failed to do. *Id.* at 189. The court was careful not to expressly hold that Title VII provides for an interference claim. Moreover, the basis for an interference claim is 42 U.S.C. § 2000e–2(a), which does not apply to the federal government. *See* 42 U.S.C.

§ 2000e(b). Finally, the *Bender* opinion provided that only an "employer" under Title VII may be liable on an interference claim; however, Title VII expressly excludes the federal government from its definition of employer. *Id.* For these reasons, the undersigned declines to find that Plaintiff has stated an interference claim under Title VII.

III. Conclusion

For the foregoing reasons, the undersigned recommends the district court grant Defendant's motion to dismiss Plaintiff's complaint [Entry # 46].

IT IS SO RECOMMENDED.

May 9, 2014.